# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 34087

STATE OF IDAHO,               )
)     **2009 Opinion No. 22**
       Plaintiff-Appellant,   )
)     **Filed: April 2, 2009**
v.                 )
)     **Stephen W. Kenyon, Clerk**
PEGGY JEAN FINNICUM,   )
)
       Defendant-Respondent. )
)

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge; Hon. Penny E. Friedlander, Magistrate.

Appellate decision of district court, reversing magistrate's denial of defendant's motion to suppress evidence, <u>reversed</u>, and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for appellant. Rebekah A. Cudé argued.

Frederick G. Loats, Coeur d'Alene, for respondent.

_____

LANSING, Chief Judge

The State appeals from the district court's appellate decision that reversed the magistrate court's denial of defendant Peggy Jean Finnicum's motion to suppress evidence acquired after police entered her home without a warrant. We reverse the district court.

## I.

## BACKGROUND

In the early evening of September 25, 2005, deputies J.R. McFarland and Theodore Vrevich were dispatched, in separate vehicles, to respond to a reported domestic dispute involving Finnicum and her son. Deputy McFarland arrived first, but by the time he got there Finnicum had driven away. Finnicum's son told Deputy McFarland that he believed Finnicum was highly intoxicated. While Deputy McFarland was talking with her son, Finnicum approached in her vehicle. Deputy McFarland flagged her down and ordered her to park the vehicle in a safe location and to exit the vehicle. In the course of this conversation, McFarland noticed that Finnicum smelled of alcohol and had slurred speech and glassy, bloodshot eyes. He

1

informed her that he was there to investigate a domestic dispute between her and her son and told her that she appeared to be intoxicated and driving under the influence. He directed her to stay near her vehicle while he conversed with her son.

Deputy Vrevich later arrived on the scene to assist McFarland. Vrevich testified that he saw Finnicum walk away from her vehicle and toward her residence, whereupon he followed her. Finnicum entered the residence before Vrevich reached her, however, so he followed her inside. Deputy McFarland entered also. While speaking with the deputies inside the house, Finnicum admitted that she had been drinking and driving. The deputies took her outside to conduct field sobriety tests, during which she exhibited signs of intoxication. Deputy McFarland then placed her under arrest for driving under the influence of alcohol (DUI). She was later given breath tests, returning breath alcohol content readings of .26 and .25, more than three times the legal limit for drivers. Idaho Code § 18-8004. Finnicum was cited for misdemeanor driving with excessive alcohol concentration, I.C. §§ 18-8004, 18-8004C.

Finnicum filed a motion to suppress any evidence obtained following the deputies' entry into her home on the ground that the entry violated the Fourth Amendment. The magistrate concluded that the officers had effectuated an investigative detention of Finnicum based on reasonable suspicion of DUI while she was outside of the residence, and that it was permissible for them to follow her when she fled into the house in order to escape that detention. The magistrate therefore denied her motion. Finnicum then entered a guilty plea conditioned on her right to appeal the denial of the suppression motion.

On the intermediate appeal, the district court disagreed with the magistrate's determination that officers may pursue a suspect into a home in order to complete an investigative detention that was initiated in a public location. The court then went on to analyze the deputies' entry as one to make an arrest. The district court concluded that the deputies had probable cause to arrest Finnicum before she went into the house, but that their entry was impermissible because the State had not shown exigent circumstances that justified pursuing Finnicum into the home without a warrant. The district court therefore reversed the magistrate's order denying the suppression motion and vacated the judgment of conviction. The State now appeals from the district court's decision.

## II.

## ANALYSIS

When reviewing a decision of the district court acting in its appellate capacity, we directly review the decision of the district court. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). We examine the magistrate record, however, to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). On review of a decision to grant or deny a motion to suppress evidence, we will defer to the trial court's findings of fact unless they are clearly erroneous, but we exercise free review over the application of constitutional standards to those facts. *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct. App. 1998).

The magistrate court analyzed the deputies' entry of Finnicum's home as one involving an investigative detention of Finnicum based on reasonable suspicion, whereas the district court analyzed the circumstances as an arrest based upon probable cause. While we agree with the district court that the deputies' actions should be viewed as accomplishing an arrest supported by probable cause, we disagree with the district court's conclusion that the entry offended the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures. When a warrantless search or seizure occurs, the government bears the burden of proving facts necessary to establish an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *State v. Yeoumans*, 144 Idaho 871, 873, 172 P.3d 1146, 1148 (Ct. App. 2007). Evidence obtained in violation of the Fourth Amendment must be excluded from evidence in a criminal prosecution of the person whose rights were violated. *Mapp v. Ohio*, 367 U.S. 643 (1961); *State v. Jenkins*, 143 Idaho 918, 920, 155 P.3d 1157, 1159 (2007).

The Fourth Amendment prohibits police from making a warrantless, nonconsensual entry into a suspect's home for a routine, non-exigent arrest, *Payton v. New York*, 445 U.S. 573, 587-88 (1980); *Jenkins*, 143 Idaho at 920, 155 P.3d at 1159; *State v. Christiansen*, 119 Idaho 841, 843, 810 P.2d 1127, 1129 (Ct. App. 1990), but it does not forbid warrantless arrests of individuals in a public place based upon probable cause. *United States v. Watson*, 423 U.S. 411, 423-24 (1976); *Jenkins*, 143 Idaho at 921, 155 P.3d at 1160; *Christiansen*, 119 Idaho at 843, 810 P.2d at 1129. In *United States v. Santana*, 427 U.S. 38, 43 (1976), the United States Supreme

3

Court held that a suspect may not defeat an arrest that was initiated in a public place by escaping to a private place, such as a home. *See also Jenkins*, 143 Idaho at 922, 155 P.3d at 1161; *State v. Wren*, 115 Idaho 618, 621, 768 P.2d 1351, 1354 (Ct. App. 1989). Thus, arrests based on probable cause, if commenced in a public place, may be completed in a private residence if that is where the suspect flees.

Probable cause for an arrest requires that police possess information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong suspicion that a crime has been committed by the arrestee. *State v. Kysar*, 116 Idaho 992, 993, 783 P.2d 859, 860 (1989); *State v. Zentner*, 134 Idaho 508, 510, 5 P.3d 488, 490 (Ct. App. 2000). Whether there is probable cause to arrest an individual depends upon the totality of the circumstances and the assessment of probabilities in the particular factual context. *Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003). The facts making up a probable cause determination are viewed from an objective standpoint. *State v. Julian*, 129 Idaho 133, 136-37, 922 P.2d 1059, 1062-63 (1996).

In this case, Deputy McFarland clearly had probable cause to arrest Finnicum for DUI before she retreated into the house. Finnicum's son had informed him that Finnicum had been drinking all day, was highly intoxicated, and had recently driven away. About half an hour later, Deputy McFarland saw Finnicum driving on the adjacent public road and flagged her down. He then made observations that tended to confirm the report that she was intoxicated--she smelled strongly of alcohol, slurred her speech, had glassy and bloodshot eyes, and seemed confused. When Deputy Vrevich arrived, he noticed that Finnicum seemed unable to walk in a straight line. Collectively, this information amply provided probable cause for Finnicum's arrest for DUI, and McFarland was authorized by state law to make a misdemeanor arrest without a warrant because the offense was committed in his presence. *See* I.C. § 19-603(1). Deputy McFarland not only possessed probable cause before he entered the residence, but he had already taken steps toward an arrest, notifying Finnicum that he suspected her of DUI and ordering her to stay by her vehicle while he finished interviewing her son. Although Finnicum initially complied, she ultimately disregarded this order and went into her residence.

Given these circumstances, Deputies McFarland and Vrevich acted lawfully when they followed Finnicum into the house because they were completing a justified arrest that had been set in motion in a public place. This conclusion is dictated by the United States Supreme Court's decision in *Santana*. There, police possessing probable cause to arrest Santana for a drug offense went to her house, where she was standing in the doorway. As the officers approached, they

4

shouted, "Police!" and displayed their identification, whereupon Santana retreated into the vestibule of her home. The officers followed her through the open door and caught her in the vestibule. Addressing the question of "whether her act of retreating into her house could thwart an otherwise proper arrest," the Supreme Court held that it could not. The Court concluded that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *Santana*, 427 U.S. at 43.

Here, Deputy McFarland had progressed further toward effectuating an arrest--by ordering Finnicum to stay by her vehicle--than had the officers in *Santana* who had merely yelled "Police!" and showed their identification. Finnicum's arrest was set in motion in a public place, and she may not gain refuge through her subsequent refusal to obey a lawful police order. Therefore, the deputies' entry of Finnicum's home to complete the arrest did not violate the Fourth Amendment.[1]

Finnicum has presented no argument countering the above analysis that there existed probable cause for her arrest and that the arrest was set in motion before she fled to her house. Rather, Finnicum's argument that the deputies' intrusion was unconstitutional is predicated upon the Idaho Supreme Court's decision in *State v. Maland*, 140 Idaho 817, 103 P.3d 430 (2004). There, the Court concluded that an investigative detention could not be effectuated by a warrantless, nonconsensual entry into a residence or place of business without probable cause and exigent circumstances. *Id.* at 824, 103 P.3d at 437. *Maland* is inapposite, however, because it involved only an investigative detention based on reasonable suspicion, not probable cause for an arrest, and because the detention was initiated *by* the entry into a residence, not by any act taken outside the residence.

The deputies' entry into Finnicum's home did not violate her constitutional rights. The magistrate court thus appropriately denied Finnicum's suppression motion, and the district court's order overturning the magistrate court was erroneous. We therefore vacate the district court's appellate order and remand for further proceedings.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**

---

[1]    The State also proposes hot pursuit and exigent circumstances as alternate justifications for the warrantless entry into Finnicum's home. Since we find the police conduct lawful without considering those proposed bases, we do not address them.

5